STATE OF NEW YORK
UNITED STATES DISTRICT COURT: WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────────────

BROOK THURBER,

Index No.:

Plaintiff,

vs.                                                 **COMPLAINT**

THE CITY OF BUFFALO, CITY OF BUFFALO
POLICE COMMISSIONER DANIEL DERENDA, CITY OF
BUFFALO POLICE DETECTIVE BRENDAN KIEFER,
CITY OF BUFFALO DETECTIVE DEBORAH MULHERN,
and CITY OF BUFFALO POLICE DETECTIVE ELLAN NOWADLY

Defendants.

─────────────────────────────────────────────

**JURY DEMAND**

Trial by Jury on all issues is demanded

**PRELIMINARY INTRODUCTION**

1.      This is a civil rights action brought pursuant to 42 U.S.C § 1983 for the violation of

Plaintiffs' Fourth and Fourteenth Amendment rights of the United States Constitution. The claim

arises from an October 31, 2014 incident in which Officers from the Buffalo Police Department,

acting under color of state law, intentionally and willfully subjected Plaintiff to, among other

things, excessive force by Defendant Detective Brendan Kiefer. Defendant Kiefer kicked

Plaintiff, causing her injury. He then unlawfully seized Plaintiff's property, discharging his

firearm gratuitously and in an unjustified manner, thereby shooting and killing Plaintiff 's

companion animal in the form of her canine, aka. Coco. Funds were seized from Plaintiff, with

no receipt given nor was there anything produced that would document what happened to the money. Defendant Detective Mulhern unlawfully detained Ms. Thurber in a bathroom, where she coerced a statement from Plaintiff that the Police Department chose to withhold for two and a half months before turning it over. Coco's bullet riddled corpse was then seized and held by the Buffalo Police Department, who then, without obtaining permission from Plaintiff, attempted to dispose of the body, thereby tampering with the evidence.

**PARTIES**

2.      Plaintiff, Brook Thurber, resides at all times here relevant in the City of Buffalo, Erie County, and State of New York.

3.      Specifically, at the time of the events in question, Plaintiff Brook Thurber had been staying as a guest for only a week at 73 Poultney Street, Buffalo, N.Y. 14215, as of October 31, 2014, which is the date giving rise to the causes of action as set forth in this complaint.

4.      Further, Plaintiff Brook Thurber, along with her companion dog, aka Coco, a two (2) year old pit bull mix, were peacefully sleeping in the above-mentioned residence on the morning of October 31, 2014, which, as stated, is the date giving rise to the causes of action as set forth in this complaint.

5.      Upon information and belief, The City of Buffalo, is a municipal corporation duly organized and existing under and pursuant to the laws of the State of New York. At all times relevant hereto, the City of Buffalo Police Department was responsible for the policy, practice, supervision, implementation, and conduct of all Buffalo Police Department matters and was responsible for appointment, training, supervision, discipline and retention and

conduct of all Buffalo Police Department personnel. In addition, at all times here relevant, The City of Buffalo was responsible for enforcing rules of the Buffalo Police Department, and also ensuring that the Buffalo Police Department personnel obey the laws of the United States and the State of New York.

6.      Upon information and belief, Defendant Police Commissioner Daniel Derenda, is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

7.      Upon information and belief, Defendant Detective Deborah Mulhern, is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

8.      Upon information and belief, Defendant Detective Brendan Kiefer, is employed by the City of Buffalo Police Department and was acting in such capacity during the events that give rise to this lawsuit.

## **JURISDICTION**

9.      Plaintiff brings this action to recover damages for the violations of her civil rights under the Fourth Amendment of the United States Constitution, codified at 42 U.S.C. § 1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

10.      The unreasonable shooting of a companion animal constitutes an unreasonable "seizure," of personal property under the Fourth Amendment. **Carroll v. County of Monroe**, 712 F.3d 649 (2013).

11.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question) and §

1343 (civil rights).

12.     Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. §§ 2201 and

2202.

13.     Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983, including

but not limited to Plaintiffs' lost wages, loss of consortium, and the loss of Plaintiffs' liberty

and freedom pursuant to the illegal and unlawful conduct of the Defendants.

14.     Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ.

P. Rule 54.

15.     As mandated by the Supremacy Clause, in relations to actions brought pursuant to 42

U.S.C. § 1983, Plaintiff does not have to comply with Municipal Law Section 50-e with

regard to filing a Notice of Claim with regard to Federal Causes of Action.

16.     At all times here mentioned, Defendants were acting under the color of state law, to

wit, under color of statutes, ordinances, regulations, policies, customs and usages of the

City and State of New York, albeit in a conspiratorial, unethical and dishonest manner.

**VENUE**

17.     This action properly lies in the Western District of New York, pursuant to 28 U.S.C. §

1343(3) because the claims arose in this judicial district and the Defendants reside in and /or

do business in Erie County.

**FACTUAL BACKGROUND**

18.     On the morning of October 31, 2014 at approximately 10:30 a.m., seven (7) City of

Buffalo Police SWAT members, entered the lower apartment of 73 Poultney Street, Buffalo,

New York, breaking the door down of said residence with guns drawn and faces covered while executing a search warrant therein. However, the underlying application used to obtain said search warrant failed to mention that there were any current indicia of criminal activity, and that the informants statement was based on hearsay, as opposed to the informant's own personal knowledge.

19.     The residence in question, was that of Plaintiff, Brook Thurber's friend Sharita, who was not present at the time and who had offered Plaintiff a place for her and her two (2) year old docile companion dog Coco, a white pit bull mix, to stay until Plaintiff could acquire her own apartment, as Plaintiff had planned to do the following day. Plaintiff, along with Coco, had been staying at said residence for approximately a week after she had a disagreement with her mother who she had been staying with previously. Plaintiff's young children remained at her mother's home until Plaintiff could secure an apartment for her, her children, and Coco.

20.     Defendant detectives proceeded into the residence, guns drawn, screaming for anyone present to get on the ground. It was then that Plaintiff, asleep on the loveseat. startled and terrified, moved to the floor in compliance with Police directives.

21.     In doing so, Defendant Detective Kiefer straddled Plaintiff's body, as she remained on the ground and demanded that she lie flat. He then kicked her in the thigh causing Plaintiff agonizing pain and terror. Such a kick produced bruising and swelling on Plaintiff's thigh. Plaintiff was kicked so hard by Defendant Kiefer that said kick caused her thigh to be deeply bruised and aching for days.

22.     Plaintiff was concerned for her beloved dog Coco, who she saw lying and cowering on the ground near a heat duct where he often would sleep in an open adjacent room. Plaintiff was also highly familiar with the Defendants's propensity to shoot and kill dogs on sight during search warrants, specifically those that resembled pit bulls. As a result, Plaintiff told Defendant Detective Kiefer that her dog was nice and wouldn't bite and she asked to move him to a crate that was within the same room. Plaintiff begged Defendant Kiefer not to kill Coco, who was ten (10) feet away from the cowering dog.

23.     Despite Plaintiff's pleas to kennel Coco, Defendant Detective Kiefer, as he remained straddled over Plaintiff, aimed his gun at the cowering docile dog who remained laying on the ground by a heat duct in the living room. The canine had not barked nor even moved once since the police entry. Defendant Kiefer then brutally shot the animal twice while he was simultaneously telling Plaintiff that "these nigger dogs don't deserve to live." Presumably, Defendant Kiefer was referring to the maligned and misunderstood pit bull breed when making that assertion.

24.     Coco lay dead on the floor where moments before he had been quietly laying, as Plaintiff, just ten feet away, looked on in horror as she witnessed the merciless killing of her pet and her children's best friend.

25.     Plaintiff had rescued Coco, a formerly abused dog, six (6) months prior. He was a shy and good-natured dog, who often interacted with Plaintiff's two young children, who loved him dearly. Coco had never once shown any outward signs of aggression. In fact, perhaps due to his past abuse, Coco was a timid dog who was prone to retreat in times of stress and would never hurt anyone.

26.     Coco presented no imminent threat, and certainly no imminent threat that could remotely justify lethal force after no other lesser means of force were attempted. Defendant Kiefer acted unreasonably, as judged objectively by the prospective of a reasonable Police Officer, and not the subjective intent of said Detective, though it is evident that even the subjective intent of said Defendant was to shoot the innocent dog. Such intent was demonstrated by his racist justification that this dog, and others like him, deserved to die.

27.     Plaintiffs' interest in being free from such unreasonable seizures of her property and being free from unreasonable interference with the companionship, she, as well as her young children had with her dog Coco, outweigh any interests Defendants may have to justify their interference with Plaintiff's property rights in the ownership of said dog or to gratuitously kill the dog out of sheer enjoyment and reasoning.

28.     No officers were bit in this instance, and witness accounts as well as forensic evidence indicate that Coco was over ten (10) feet away from Defendant Detective Kiefer, in a prone and supine position, at the time he was shot.

29.     Defendant Detectives then searched and ransacked the residence. Plaintiff, who couldn't bare the site of Coco's bloody corpse, was then handcuffed and taken to the kitchen where her person was searched. Plaintiff was questioned regarding drugs and weapons. $1,600 was removed from her bra by Defendant Detective Mulhern, where it was laid on the kitchen counter and assessed by the K9 unit. The money, meant as deposit and first month rent for the apartment Plaintiff had intended to acquire the next day, was never documented by Defendants on any paperwork, nor was it ever returned to Plaintiff.

30.     Defendant detective Deborah Mulhern then detained and unlawfully imprisoned Plaintiff in the bathroom where a statement was taken, which, due to the circumstances with which the statement was taken, would render the statement to be involuntarily adduced by the Defendant Officers.

31.     Plaintiff was charged with a B felony for possessing cocaine with the intent to sell said product, though no drugs of any sort were found on Plaintiff's person. Plaintiff was accused of possessing these items constructively, in that the items were found in a house she did not live in, during the execution of a search warrant in which she was not mentioned on the warrant's application. Simply put, Plaintiff was in the wrong house at the wrong time, when the Defendants broke down the door, guns drawn, used excessive force to assault her, and then executed her dog Coco who was cowering in fear.

32.     Defendants then unlawfully converted the property of Plaintiff, by seizing the body of Coco without the permission of Plaintiff wherein they had animal control confiscate him and were in the process of attempting to have the body incinerated. This was done in a continuing course of fraudulent conduct with the intent to conceal and cover up the criminal activity of said Defendants.

33.     After legal intervention, Coco's body was transported to Cornell Veterinary Institute and a full necropsy was performed.

34.     Plaintiff was arraigned on November 1, 2014 while the statement attributed to her was served upon this author on January 12, 2015, long after the 15-day period to notify Plaintiff that the People intended to use a statement allegedly made by her at trial, pursuant to Criminal Procedure Law §710.30.  It is well settled that Officer failure and/or disregard of

the notice requirements does not constitute good cause to provide timely notice of the intent to serve notice of such statement. Furthermore, as stated, the statement was taken under duress while Plaintiff was being unlawfully detained in a bathroom by a larger woman in the form of Defendant Mulhern.

35.     Plaintiff, though in the same residence in which drugs were found, was merely a victim of circumstance. There was no probable cause to make such an arrest, and therefore insufficient evidence to convict her. As a result, Plaintiff was ultimately found to have committed no crimes and all charges lodged against her were dismissed.

36.     Said dehumanization, violation and deprivation of Plaintiff's CIVIL RIGHTS as afforded the claimant under both the New York State Constitution and the United States Constitution has caused Plaintiff to be under severe emotional distress. Upon information and belief, the incident herein described and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, reckless disregard and/or unlawful conduct on the part of the agents, servants and/or employees of the Defendants.

**First Cause of Action for violations of the Fourth, Eighth and Fourteenth Amendment as per 42 U.S.C. § 1983 against Defendant BUFFALO POLICE DETECTIVE BRENDAN KIEFER in his Official and Individual Capacity by using excessive force and assaulting Plaintiff while acting under the color of law**

37.     Plaintiff, BROOK THURBER repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

38.     As stated, on or about October 31, 2014, Defendant Detective Brendan Kiefer, while acting under the color of law, did brutally assault Plaintiff by straddling her body as she complied with his orders and laid herself on the floor. Defendant Kiefer then kicked her in

the thigh with such force that it caused her thigh to become deeply bruised and caused her significant pain and swelling.

39.     Such actions by Defendant Kiefer were shocking to the conscience, malicious in nature, and completely unreasonable in nature based on either a subjective or objective analysis.

40.     Plaintiff was of no threat, nor could Defendant Kiefer contend otherwise. Such an act of excessive force constitutes a seizure under the Fourth Amendment. Such actions were committed by Kiefer for the sheer reason to terrorize and harm Plaintiff as she was in compliance with his directive by laying on the ground and face down at the time such force was used.

41.     The assault caused Plaintiff physical injury as she developed severe swelling and bruising and continues to suffer emotionally from the traumatic and shocking assault.

**Second Cause of Action for violations of the Fourth and Fourteenth Amendment as per 42 U.S.C. § 1983 against DEFENDANT DETECTIVE BRENDAN KIEFER for the unlawful damaging and deprivation of Plaintiff's property rights.**

42.     Plaintiff, repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

43.     On or about October 31, 2014, Defendant Detective Kiefer, in a gratuitous and unjustified manner, shot and killed Coco from ten feet away. Kiefer shot a non-barking, non-threatening, cowering dog, aka Coco, as the dog laid on the floor in a non-confrontational manner.

44.     Some particulars of said evidence is the fact:

- Defendant Detectives entered the residence through a side door by breaking the door down, rushing into the residence guns drawn and shouting for everyone to get down.

- The dog, at the time of shooting and no other time before the incident, showed no aggression toward Defendant Detective Kiefer or any other individuals on the scene.

- The residence in question was not that of Plaintiff's, as she was merely at the wrong place at the wrong time and had been staying as a guest on the couch.

- Plaintiffs committed no crime and did not have any drugs on her person.

- Defendant Kiefer merely justified his actions by stating that "these dogs are nigger dogs and don't deserve to live." Such a statement establishes animus as opposed to the proposition that reasonability or fear was at the basis of Defendant's shooting the animal in question.

45.    The above-referenced conduct demonstrates that the Defendants conspired to and did deprive the Plaintiffs of her liberty as would shock the conscious in violation of her rights as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

46.    The circumstances surrounding the offense are frightening in nature, and emblematic of the erosion of trust that is now so prevalent in this country between the criminal justice system and the citizenry that the system is designed to protect. While this action somehow

didn't make its way into the prosecutions paperwork, Defendant Detective Kiefer assaulted

Plaintiff and killed her dog Coco from a distance of about 10 feet while the dog was

cowering in the corner after police had violently entered. Predictably, The Buffalo Police

Department found the presence of alleged cocaine in the house to be paramount in

importance as opposed to the aggravated act of animal cruelty against a companion animal

that has left Plaintiff and her young children traumatized.

47.     Coco, as Plaintiff's best friend and companion, constitutes a special classification of

property under New York State Law. Defendants seized and killed said companion animal

in a matter that shocks the conscience, and in a criminal and unjustified matter.  **Travis v.**

**Murray**, 42 Misc.3d 447 (2013). Plaintiff continues to suffer from emotional wounds from

the heinous act to this day, as her companion animal is dead.

48.     It is undisputed that, in the Second Circuit, the unreasonable shooting of a companion

animal constitutes an unreasonable "seizure," of personal property under the Fourth

Amendment. **Carroll v. County of Monroe**, 712 F.3d 649 (2013).

49.     Said above-referenced actions, both individually and in their entirety, fully

disregarded the Constitutional rights of the Plaintiffs to be free of unlawful and

unreasonable seizures of one's property under the Fourth Amendment of the Constitution.

**Third Cause of Action for violations of the Fourth and Fourteenth Amendment as
per 42 U.S.C. § 1983 for municipal liability under the deprivation of one's property
rights in the fact that the shooting of citizens' dogs is a municipal pattern or practice
against THE CITY OF BUFFALO and CITY OF BUFFALO POLICE CHIEF
DANIEL DERENDA, AND CITY OF BUFFALO DETECTIVE BRENDAN
KIEFER**

50.     Plaintiff repeats and reiterates each and every foregoing allegation of this complaint
with full force and effect as if set forth at length in this cause of action.

51.     Aside from the above-referenced set of facts, the City of Buffalo and the Buffalo
Police Department caused the Plaintiff to be subjected to Fourth Amendment violations
because the City of Buffalo, City of Buffalo Police Commissioner Daniel Derenda, and, in
this case specifically, Defendant Detective Kiefer's unjustified shooting of the canine in
question, aka Coco, constituted a Fourth Amendment deprivation of property violation
that is part of the customary practice of the City of Buffalo.

52.     To establish a municipal liability claim, "a plaintiff is required to plead and prove
three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected
to (3) a denial of a constitutional right." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d
129, 140 (2d Cir. 2010) (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir.
2007)). A plaintiff can establish an official policy or custom by showing any of the
following: (1) a formal policy officially endorsed by the municipality; (2) actions or
decisions made by municipal officials with decision-making authority; (3) a practice so
persistent and widespread that it constitutes a custom of which policymakers must have
been aware; or (4) **a failure by policymakers to properly train or supervise their
subordinates, such that the policymakers exercised "deliberate indifference" to the
rights of the plaintiff and others encountering those subordinates**. Iacovangelo v.
Corr. Med. Care, Inc., 624 F. App'x 10, 13-14 (2d Cir. 2015) (formal policy officially
endorsed by the municipality); Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 62 (2d
Cir. 2014) (widespread and persistent practice); Carter v. Inc. Vill. of Ocean Beach, 759

13

F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); Jones

v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or

"tacit" ratification of low-level employee's actions).). Relating to widespread and

pervasive practices and using logical inferences to impute knowledge onto policymakers,

circumstantial evidence can be sufficient to support an inference that . . . a municipal

policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y.

2012) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

 In this instance, the following constitutes the pattern or practice of the Buffalo Police

Department and the City of Buffalo.

- That Defendant Kiefer shot and killed Coco, the canine in question, as the dog was.

  lying in a docile manner. The Buffalo Police Department has wrongfully shot

  numerous dogs through the years, through the deliberate indifference to the dogs'

  owner's Fourth Amendment rights to be free from unlawful seizures of such property.

  Such indifference to this particular right, and civil rights in general, is perpetuated by

  the fact that agents of the Society of Prevention of Cruelty to Animals has reached out

  many times to Commissioner Derenda and offered valuable training so that the City of

  Buffalo's Police Department can interact with animals during search warrants and not

  kill said animals with the frequency and ferocity with which they currently do so. Said

  requests to assist the Department through its policy maker, Defendant Derenda, have

  been categorically ignored and denied by the City of Buffalo and its Police

  Department. Such is the height of deliberate indifference.

- Two other representative examples of such unreasonable and unnecessary killings of

said animals close in time to this killing are as follows:

- The City of Buffalo Police Department's shooting and killing a small female Pit-Bull type dog that was friendly and non-threatening, belonging to Adam Arroyo, a US Army E-5 Sargent, aka Cindy, wherein The Buffalo Police Department somehow executed the search warrant at the wrong address, trashed the property, leaving the premises unsecured. Detective Joseph Cook brutally shot and killed Arroyo's dog Cindy on June 3, 2013. Detective Cook, as he had done roughly 100 times throughout his career as a Buffalo Police Officer and Detective, shot and killed Cindy as she was tethered to the sink. Physical evidence proves she was shot at the location, while tied up and harmless, from blood spatters depicted in photos to the leash itself that lay by the sink.

- The unjustifiable and unnecessary killing of Ronald Raiser and Joseph Smith's nine  (9) month old friendly, intelligent and obedient male Pit Bull puppy, aka Rocky on or about July 29, 2014. Smith was laying in his bed with Rocky when Detective Adams and Cook started intentionally, unjustifiably, and mercilessly shooting at Rocky from the doorway into the room. Rocky was merely sleeping on the bed with Smith at the time, looking at the officers who were in the doorway and not acting in a threatening manner in any way, shape, or form. Said Officers could have easily shut the door and directed Smith to cage the harmless puppy. Detectives Cook and Adams combined to shoot Rocky five (5) times, brutally killing the helpless and harmless animal. Forensic evidence and photographs establish the animal was shot while in bed, or at most, stretching and placing his paws on the floor.

15

- In all three of the above representative examples, the Officers in question took and displayed pleasure as a result of their misdeeds. There are numerous more instances of this pattern or practice taking place through the years.

- That, in both this case and numerous others through the years, the City of Buffalo Police Department unjustifiably kills a companion animal, and, in a backward and sinister thinking manner, the actor or fellow officers **then** contact animal control to dispose of the dead or severely wounded body, as opposed to previously contacting the agency to control the animal when said animal was alive, thereby preserving the lives of the innocent animals.

- That such practice also always results in superficial "reviews," relating to whether the discharge of the Officer's firearm and resultant kill was proper. Such shams of an investigation are done without any review of relevant evidence, just self-serving propagandist statements by police Officers.

- Furthermore, Plaintiff more than establishes an "affirmative link" between the **municipal** policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation). City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, n.8, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). The nexus is fully established between the custom and this particular Constitutional deprivation. The above facts demonstrate that Defendant Kiefer's kill of Coco was driven by animus and the recognition that he could kill said animal without any fear of repercussion.

- Such repeated Fourth Amendment violations amount to the City of Buffalo and the

City of Buffalo Police Department's deliberate indifference to an obvious need for training of its officers both in the laws pertaining to unlawful seizures, in the art of de-escalation, and in how to avoid conflict and especially lethal conflict when dealing with canines. This failure of the Department to adequately train, supervise, and regulate their Detectives and Officers' dealings with canines resulted in Defendant Kiefer's actions in shooting Coco and thereby causing the Plaintiff insufferable and egregious harm, and will result in more unnecessary bloodshed if corrective measures aren't taken by the City of Buffalo and City of Buffalo Police Department.

- Furthermore, the City of Buffalo and its Police Department tacitly condone the practice of lethal means used as a first resort against dogs, otherwise known as **puppycide**, a disturbing American phenomenon, by only performing a superficial, biased, and artificial review of the dogs killed by its Police's Department which always results in the erroneous and contrived finding that the discharge of the weapon by the Officer, which results in the killing or shooting of the dog, is justified by the officer.

- The policymaker, namely Defendant Derenda would know 'to a moral certainty' that his employees will confront a given situation, specifically the encountering of canines during the course of Police business. The situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation, as is shown above. Further, it is clear that the wrong choice by the City employee will frequently cause the deprivation of a citizen's constitutional rights. Cerbelli v. City of New York, 2008 U.S. Dist. LEXIS 109341, 99 CV 6846, (E.D.N.Y, 2008).

17

- Such inaction is the textbook definition of deliberate indifference. Plaintiff has pled as much, and can recover on such a theory under <u>Monell</u>. Local humane agencies such as the Erie County SPCA have reached out repeatedly and offered assistance to the Buffalo Police  Department, who have shunned any outreach efforts to curb the bloodshed of canines.

53. The above-referenced misuse of authority and power by said Defendants named in this cause of action was egregious and shocking to the conscience. As a result, the Plaintiff was caused and will continue to undergo and endure severe mental anguish, hardship, and distress as a result thereof.

54. Such deprivations of Plaintiff's property rights and right to liberty and happiness was in violation of the rights secured to Plaintiff by the Fourth Amendment of the United States Constitution and by Title 42 U.S.C. § 1983.

55. As a result of the above-referenced defendant's deprivation of Plaintiff's civil and Constitutional rights, Plaintiff has been damaged in an amount to be determined at trial.

56. Plaintiffs demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Fourth Cause of Action for violations of the Fourth Amendment as per 42 U.S.C. § 1983 for unlawful imprisonment against City of Buffalo Police Detective Timothy Mulhern, Police Detective Deborah Mulhern, Police Detective Ellen Nowadly, and Police Detective Brendan Kiefer**

57.  Plaintiff Brook Thurber, incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

58. The Fourth Amendment prohibits the police from carrying out unreasonable seizures. An arrest is a "seizure" under the Fourth Amendment.  Under the Fourth Amendment, an

arrest may only be made when a police officer has probable cause to believe that the person arrested has engaged in criminal conduct.  An arrest without probable cause is an unreasonable seizure.

59.     In New York, any § 1983–based false arrest claims are "distinguished from their state law analogues only by the requirement that the tortfeasor act 'under color of state law.' " Hickey v. City of New York, No. 01 Civ. 6506, 2004 WL 2724079, at *6 (S.D.N.Y. Nov.29, 2004) (citing Post v. Doherty, 944 F.2d 91, 94 (2d Cir.1991)). Therefore, this Court must look to the New York State law of false arrest, recognizing that in New York, claims of false arrest are synonymous with those of false imprisonment. Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 157 (S.D.N.Y. 2006).

60.     To establish a claim for false arrest, plaintiff must prove:

  a.   defendant intended to confine plaintiff;

  b.   plaintiff was conscious of the confinement;

  c.   plaintiff did not consent to the confinement; and

  d.   the confinement was not otherwise privileged.

61.     An individual can be said to have been seized by the police only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. (citations and interior quotation marks omitted); see Brown v. Sweeney, 526 F. Supp.2d 126, 132 (D. Mass. 2007).

62.     Factors which might suggest a seizure therefore include: the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory.

63.     In the case at hand, all Defendants were acting under the color of state law, as they

were all on duty at the time as City of Buffalo Police Detectives during this event, thereby

sworn to uphold and enforce the laws of New York State. Defendant Deborah Mulhern

intended to confine the Plaintiff in the bathroom, as she would not let her leave until the

same Defendant could coerce a statement from her. Defendant Kiefer intended to confine

Plaintiff when he stood on top of her and kicked her, as referenced above, clearly not

allowing her to leave. Defendant Nowadly ultimately arrested and incarcerated Plaintiff,

while Defendant Timothy Mulhern participated in such an arrest by filing charges against

said Plaintiff. Plaintiff was certainly conscious of the confinement as she was traumatized

and in fear, seeing her dog and companion animal blown up in front of her. Plaintiff, while

complying to a point with the Defendants so as not to get injured further, did not agree or

consent to the confinement voluntarily, and in fact attempted to resist such confinement,

and said confinement was not otherwise privileged.

64.     Said confinement was lacking in probable cause, as Plaintiffs' mere presence in a

house where drugs are present does not constitute probable cause, in and of itself, that

Plaintiff possessed said drugs.

65.     Plaintiffs' liberty, as well as her dignity, were stripped and she was not free to leave

the bathroom. Further, Defendant Deborah Mulhern took $1600 from Plaintiff"s bra. Such

money was referenced in Defendant Timothy Mulhern's accusatory instrument, but not

itemized, otherwise documented, nor otherwise returned in any way, shape, or form to

Plaintiff. Such funds were legitimately earned and needed by Plaintiff to obtain an

apartment for her and her two young children.

66.　At all times, the unlawful, wrongful, and false imprisonment of Plaintiff was without basis <u>and without probable cause or reasonable suspicion,</u> and resulted in a violation of Plaintiffs' civil liberties.

67.　Such conduct, in conjunction with all facts alleged herein this complaint, constitutes that all named Defendants caused, in whole or in part, Plaintiff to be unreasonably seized and falsely imprisoned as defined by law.

68.　The Defendant had no legal basis to seize and then confine Plaintiff, nor was there a warrant authorizing Defendant to do so, thus making such seizure unlawful.

69.　Such deprivations of Plaintiff's property rights and right to liberty and happiness were in violation of the rights secured to Plaintiffs by the Fourth Amendment of the United States Constitution and by Title 42 U.S.C. § 1983.

70.　As a result of the above-referenced Defendant's deprivation of Plaintiffs' civil and Constitutional rights, Plaintiff has been emotionally distraught, and sustained severe mental anguish, humiliation, and severe emotional distress as a result thereof, all in an amount to be determined at trial.

71. Plaintiffs demand costs and attorney fees pursuant to 42 U.S.C. § 1988.

**Fifth Cause of Action for violations of the Fourth Amendment as per 42 U.S.C. § 1983 for the unlawful taking of Plaintiff's property in the form of $1,600 in US funds against Defendant Deborah Mulhern.**

72.　Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

73.  As stated, during a strip search conducted by Defendant Deborah Mulhern, said

Defendant unlawfully seized, possessed, converted, and maintained $1,600 of US funds

owned by Plaintiff. Said funds were legitimately possessed and owned by Plaintiff prior to

the seizure of said funds by Defendant Deborah Mulhern.

74.  Said funds were not put in evidence, no forfeiture proceedings were lodged against

Plaintiff, and nor were said funds returned to Plaintiff upon her request that they be so,

once all charges were dismissed against her. By operation of law, all funds were mandated

to be returned to Plaintiff upon dismissal... but were not.

**Sixth Cause of Action for violations of the Fourth Amendment as per 42 U.S.C. § 1983 for the malicious prosecution of Plaintiff against Defendant Timothy Mulhern**

75.  Plaintiff Brook Thurber, incorporates by reference all of the allegations set forth herein in

this Complaint as if fully set forth herein.

76.  To maintain a § 1983 claim for malicious prosecution under the Fourth Amendment,

the deprivation of liberty--the seizure--must have been effected "pursuant to legal

process." Heck v. Humphrey, 129 L. Ed. 2d 383, 114 S. Ct. 2364, 2371 (1994). "The

essence of **malicious prosecution** is the perversion of proper legal procedures."

Broughton v. State of New York, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310,

cert. denied, 423 U.S. 929 (1975). Ordinarily, this "legal process" will be either in the

form of a warrant, in which case the arrest itself may constitute the seizure, *see* id. at 94

("When an unlawful arrest has been effected by a warrant an appropriate form of action is

malicious prosecution."), or a subsequent arraignment, in which case any post-

arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement.

77.      In this case, the arrest and subsequent charges lodged against Plaintiff, and the deprivation of liberty those charges caused Plaintiff, can serve as the predicate deprivation of liberty because it was "pursuant to legal process." See Heck, 114 S. Ct. at 2371; see also Broughton, 373 N.Y.S.2d at 94. The tort of malicious prosecution will implicate post-arraignment deprivations of liberty. *See* Raschid v. News Syndicate Co., 239 A.D. 289, 267 N.Y.S. 221, 225 (1st Dep't 1933 ) ("A charge and an arrest do not amount to a prosecution. The action [of malicious prosecution] lies only when a legal prosecution, a judicial proceeding, has been maliciously, and without probable cause, instituted against the plaintiff, and has been terminated in the plaintiff's favor.") (internal quotations and citation omitted), *aff'd*, 265 N.Y. 1, 191 N.E. 713 (1934) Therefore, to successfully pursue a § 1983 claim of **malicious prosecution** in violation of his Fourth Amendment rights, Plaintiff must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation. See Stachura, 477 U.S. at 309.

78.   As stated, a lengthy prosecution was pursued against Plaintiff by Defendant Timothy Mulhern, and said charges resulted in a dismissal on the merits on all counts.

79.   Such charges were brought with malice, as evinced by the above-referenced mistreatment perpetuated by the Defendants against Plaintiff, and the fact that such charges were wholly brought without probable cause.

Punitive damages are justified against the above-stated Defendants for their deliberate

indifference and malice towards the Plaintiff herein.

As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

    a.   Violation of her rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their person and seizure of their property;

    b.   Violation of her rights pursuant to the Fourteenth Amendment of the United States Constitution to due process; and

    c.   Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience and anxiety.

    d.   Compensatory damages in the form of lost wages and lost income, attorney fees, and other damages to be set forth over the course of this proceeding.

WHEREFORE, Plaintiff demands judgment on the above counts against the Defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

A.  Compensatory damages in favor of the Plaintiff in an amount to be determined by a jury;

B.  Exemplary damages in favor of the Plaintiff;

C.  Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and

D.  Punitive damages as stated above.

E.  Such other relief as the court may deem appropriate.     .

DATED:      Buffalo, New York
            October 31, 2017
                            THE LAW OFFICES OF MATTHEW ALBERT ESQ.


                            By:_____/s/ Matthew Albert_____

                            MATTHEW ALBERT, ESQ.
                            Attorney for Plaintiff
                            Office and P.O. Address
                            254 Richmond Ave
                            Buffalo, New York 14222
                            (716) 445-4119